**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Anglin,<br><br>        Plaintiff,<br><br>vs.<br><br>Susan Kennard, *et al*.,<br><br>        Defendants. | No. CIV 24-304-TUC-CKJ<br><br>**ORDER** |

Plaintiff John Anglin ("Anglin") filed a First Amended Complaint ("FAC") on November 25, 2024 (Doc. 18). Pending before the Court is the Motion to Dismiss Centene Corporation ("MTD") (Doc. 31) filed by Defendant Centene Corporation Incorporated[1] ("Centene"). Defendants Susan Kennard ("Kennard") and Alex Demyan ("Demyan") have filed a Joinder to the MTD (Doc. 33). Anglin has filed a response (Doc. 34) and Centene has filed a reply (Doc. 35).

---

[1]The MTD asserts Centene Corporation Incorporated does not exist. Rather, Centene Corporation is a holding company that provides an assortment of healthcare solutions to recipients of government sponsored healthcare and privately insured health care programs through its subsidiaries. Centene Management Company, LLC ("CMC"), is one such subsidiary that provides administrative and business support to Centene's subsidiaries. Although the MTD asserts Anglin was employed by CMC, for purposes of the MTD, Centene does not dispute Anglin's assertion he was employed by Centene Corporation.

I. *Factual and Procedural Background*[2]

Anglin is a resident of Tucson, Arizona, and was employed as a full-time salaried staff member by Centene, who operates in Arizona under the trade name Arizona Complete Health ("ACH"). ACH provides Medicaid services as a contractor for the Arizona Health Care Cost Containment System ("AHCCCS"). Anglin alleges Centene Corporation is "under contract with AHCCCS, where it administers government services that the State of Arizona would otherwise be required to perform in-house, pursuant to federal and state statutes." FAC (Doc. 18, p. 3).

In 2007, states were authorized to include peer support services as a Medicaid reimbursable service. Peer support specialists are individuals who have lived experiences of behavioral health and/or substance use recovery. They draw upon those experiences in providing coaching, training, etc. The provision of Medicaid-reimbursable peer support services is governed primarily by § 963 of AHCCCS Medical Policy Manual ("MPM"). *See* MPM § 963, https://www.azahcccs.gov/shared/Downloads/MedicalPolicyManual/900/963. pdf (last accessed 3/24/25).[3]

Anglin was employed as a Special Projects Advisor at Centene/ACH, overseeing training and community initiatives related to peer support services for Arizona Medicaid recipients with behavioral health and substance use disorders. He became aware of proposed amendments to MPM, § 963, which involved his area of expertise. The MTD states the proposed AHCCCS policy change would eliminate a training curriculum Anglin

---

[2]Unless otherwise stated, the factual background is taken from Anglin's First Amended Complaint.

[3]Judicial notice of information provided on government websites may be appropriate. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015), *citations omitted* (the court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed"); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies), *citations omitted*.

- 2 -

oversaw.  The proposed amendments were subject to public comment as per the Arizona Administrative Procedures Act.  Although comments submitted by the public were public records, "a member of the public who was not an authorized personnel [*sic*] of AHCCCS would likely need to submit a records request pursuant to A.R.S. § 39-121[, *et seq.*]."  FAC (Doc. 18, p. 6).

Anglin submitted a public comment criticizing the proposed elimination of a training curriculum for peer support specialists, specifically the method known as "motivational interviewing" on September 18, 2023.  During non-work time, Anglin submitted his comments using his personal device and email, without identifying himself as a Centene employee.

AHCCCS Administrator/Bureau Chief of the Office of Individual and Family Affairs Kennard learned of the comments the same day and "initiated a series of communications with supervisory personnel of Centene[.]" FAC (Doc. 18, p. 8).  During a September 18, 2023, conversation with Centene employee Melissa Brown ("Brown"), Anglin's direct supervisor, Kennard expressed her displeasure with Anglin's decision to provide his opinion in the form of a public comment.  Kennard requested Brown "continue to work with [Anglin] around professional conduct[.]"

Between September 18, 2023, and September 20, 2023, Kennard and AHCCCS Assistance Director of the Division of Community Advocacy and Intergovernmental Relations Demyan discussed their frustrations with the public comments made by Anglin.[4] "Defendant Kennard expressed that she believed it appropriate to instruct and/or encourage Defendant Centene Corporation to discipline [Anglin], and Defendant Demyan concurred that this was an appropriate step."  FAC (Doc. 18, p. 9).

Anglin met with Brown and Karin Uhlich ("Uhlich"), another supervisory employee. Anglin was told a reduction of responsibilities was because of Anglin's public comment; he

---

[4]Demyan was Kennard's supervisor.

1   was stripped of certain job responsibilities.  When asked if AHCCCS employees had shared

2   the comments he had made, neither Brown nor Uhlich answered the question.

3         On September 25, 2023, Uhlich terminated Anglin's employment, effective

4   immediately.  Neither Brown nor Uhlich provided Anglin with a non-retaliatory reason for

5   his termination.

6         On June 18, 2024, Anglin filed the original Complaint in this action against Kennard

7   and Demyan. This Court screened the Complaint and determined Anglin had adequately

8   alleged First Amendment retaliation claims against the defendants.

9         On November 25, 2024, Anglin filed a FAC (Doc. 18).  The FAC added Centene

10  Corporation, Inc., as a defendant.  Anglin alleges First Amendment retaliation claims under

11  42 U.S.C. § 1983 against Centene, Kennard, and Demyan.  Anglin asserts his termination

12  of employment was a result of his protected speech on a matter of public concern.

13        On January 10, 2025, Centene filed its Motion to Dismiss Centene Corporation (Doc.

14  31).  Defendants Kennard and Demyan have joined in the Motion (Doc. 33).  A response

15  (Doc. 34) and a reply (Doc. 35) have been filed.

16

17  II.  *Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)*

18        Fed.R.Civ.P. 12(b)(6) applies when a complaint lacks either "a cognizable legal

19  theory" or "sufficient facts alleged" under such a theory.  *Godecke v. Kinetic Concepts, Inc.*,

20  937 F.3d 1201, 1208 (9th Cir. 2019).  The United States Supreme Court has determined that,

21  in order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege

22  "enough facts to state a claim to relief that is plausible on its facts."  *Bell Atlantic Corp. v.*

23  *Twombly*, 550 U.S. 544, 570 (2007).  While a complaint need not plead "detailed factual

24  allegations," the factual allegations it does include "must be enough to raise a right to relief

25  above the speculative level."  *Id*. at 555.  Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing

26  that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief.

27  *Id*. at 555 n. 3.  The complaint "must contain something more . . . than . . . a statement of

28

- 4 -

1   facts that merely creates a suspicion [of] a legally cognizable right to action." *Id*. at 555.

2   The Court also considers that the Supreme Court has cited *Twombly* for the traditional

3   proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule

4   8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and

5   the grounds upon which it rests.'" *Erickson v. Pardue*, 551 U.S. 89 (2007); *see also*

6   *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (a complaint need not plead a prima

7   facie case of discrimination, but a plaintiff must plead "enough facts to state a claim to relief

8   that is plausible on its face"), *quoting Twombly*, 550 U.S. at 570.

9       In discussing *Twombly*, the Ninth Circuit has stated:

10      "A claim has facial plausibility," the Court explained, "when the plaintiff pleads
        factual content that allows the court to draw the reasonable inference that the
11      defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678
        (2009)].   "The plausibility standard is not akin to a 'probability requirement,' but it
12      asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.
        (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).   "Where a complaint pleads
13      facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line
        between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*,
14      550 U.S. at 557, 127 S.Ct. 1955).

15      In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual
        content," and reasonable inferences from that content, must be plausibly suggestive
16      of a claim entitling the plaintiff to relief. *Id*.

17  *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009).  Further, where the averments

18  pleaded establish relief cannot be granted as a matter of law, dismissal is appropriate.

19  *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

20      This Court must take as true all allegations of material fact and construe them in the

21  light most favorable to Anglin.  *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th

22  Cir.  2003).  In general, a complaint is construed favorably to the pleader.  *See Scheuer v.*

23  *Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, 457 U.S. 800.  Nonetheless,

24  the Court does not accept as true unreasonable inferences or conclusory legal allegations

25  cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624

26  (9th Cir. 1981).

27

28                                              - 5 -

1   III.  *42 U.S.C. § 1983 Claim*

2        The applicable statute states, *inter alia*:

3        **§ 1983 Civil action for deprivation of rights**

4        Every person who, under color of any statute, ordinance, regulation, custom, or
        usage, of any State or Territory or the District of Columbia, subjects, or causes to be
5        subjected, any citizen of the United States or other person within the jurisdiction
        thereof to the deprivation of any rights, privileges, or immunities secured by the
6        Constitution and laws, shall be liable to the party injured in an action at law, suit in
        equity, or other proper proceeding for redress . . .

7
   42 U.S.C. § 1983.  In other words, to state a civil rights claim, a plaintiff must allege a
8
   violation of rights protected by the Constitution or created by federal statute proximately
9
   caused by conduct of a person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d
10
   1418, 1420 (9th Cir. 1991).  Additionally, the Supreme Court has stated "the defendant must
11
   possess a purposeful, a knowing, or possibly a reckless state of mind.  That is because, as
12
   we have stated, 'liability for negligently inflicted harm is categorically beneath the threshold
13
   of constitutional due process.'"  *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015).
14
   Further, the statute is to be construed broadly.  *Dennis v. Higgins*, 498 U.S. 439, 443 (1991),
15
   *citation omitted*; *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102 (9th Cir. 2021).
16

17
   IV.  *Protected Speech Under the First Amendment*
18
        A public employee "do[es] not surrender all of [his] First Amendment rights by
19
   reason of [his] employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Rather, public
20
   employees enjoy limited First Amendment protections "[s]o long as [they] are speaking as
21
   citizens about matters of public concern[.]"  *Id*. at 411.
22
        The government cannot unduly abridge an employee's free speech rights, but has
23
   broader power to restrict the speech of its employees than the speech of its constituents
24
   given the different interests at play.  *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,*
25
   *Will Cnty., Ill.*, 391 U.S. 563 (1968).  This requires the application of a balancing test
26
   developed in *Pickering* to determine whether an employee's speech is constitutionally
27

28
                                        - 6 -

1    protected.  *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 719 (1996).  Under

2    the balancing test, a court must consider "the interests of the [employee], as a citizen, in

3    commenting upon matters of public concern, and the interest of the State, as an employer,

4    in promoting the efficiency of the public services it performs through its employees."

5    *Pickering*, 391 U.S. at 568.  The Ninth Circuit has stated:

6              The first step of the *Pickering* test involves two separate inquiries—first, whether the
               restriction reaches speech on a matter of public concern, and second, whether the
7              restriction reaches speech only within the scope of a public employee's official
               duties. *See Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951.  "In assessing a prior restraint,
8              we focus on the text of the policy to determine the extent to which it implicates
               public employees' speech as citizens speaking on matters of public concern."
9              *Moonin v. Tice*, 868 F.3d 853, 861 (9th Cir. 2017).

10   *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1102 (9th Cir. 2018).  Where speech

11   by employees in their capacities as citizens is on matters of public concern, the policy/action

12   is subject to the *Pickering* balancing test.  *Id*. at 862, 864; *see also Eng v. Cooley*, 552 F.3d

13   1062, 1070 (9th Cir. 2009) (describing *Pickering* history as a sequential five-step series of

14   questions: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the

15   plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected

16   speech was a substantial or motivating factor in the adverse employment action; (4) whether

17   the state had an adequate justification for treating the employee differently from other

18   members of the general public; and (5) whether the state would have taken the adverse

19   employment action even absent the protected speech. . . .").

20

21   A.  *Speech by a Private Citizen on a Matter of Public Concern*

22           Centene argues the alleged speech does not qualify as protected under the First

23   Amendment because it was not on a matter of public concern.  Rather, Anglin's speech was

24   made in his capacity as an employee, not a private citizen.  Anglin argues, however, that his

25   comments on the proposed policy changes were of public interest, similar to cases where

26   public employees criticized policy decisions.

27           Whether Anglin's comments addressed a matter of public concern is a question of law

28
                                              - 7 -

determined by content, form, and context. *Connick v. Myers*, 461 U.S. 138, 147-48, n. 7 (1983). This consideration requires a determination of whether the speech fairly relates to a "matter of political, social or other concern to the community." *Id.* at 146. As summarized by another district court:

> "Of the three concerns, content is king."[117] When the content of the message addresses "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," it constitutes a matter of public concern.[118] When the content involves individual personnel disputes and grievances, it does not constitute a matter of public concern.[119]
>
> [117] *Johnson[ v. Poway Unified Sch. Dist.*, 658 F.3d 954, 964 (9th Cir. 2011) (quoting *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009)).]
>
> [118] *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).
>
> [119] *Id.*

*Blanford v. Dunleavy*, 566 F. Supp. 3d 969, 990 (D. Alaska 2021).

The Ninth Circuit has stated:

> First, the plaintiff bears the burden of showing that the speech addressed an issue of public concern. *See Connick v. Myers*, [461 U.S. 138] (1983); *Bauer v. Sampson*, 261 F.3d 775, 784 (9th Cir.2001). "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 422 (9th Cir.1995) (quoting *Connick*, [461 U.S. at 146]. But "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)). "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Johnson*, 48 F.3d at 422 (quoting *Connick*, [461 U.S. at 147–48].

*Eng*, 552 F.3d at 1070. Centene argues Anglin's simple reference to government functioning does not automatically qualify his comment as containing a matter of public concern.[5] Indeed, the focus is on "whether the public or community is likely to be *truly*

---

[5]Centene provides additional content from Anglin's comment and attaches a copy of the comments to the Motion to Dismiss. As neither party has requested the Court convert the motion to a motion for summary judgment, the Court does not consider the additional

1    *interested* in the particular expression, or whether it is more properly viewed as essentially

2    a private grievance." *Desrochers*, 572 F.3d at 713, *quotation omitted*.  Accepting Anglin's

3    allegation that he has obtained expertise in the field of peer support, the facts of this case

4    are similar to *Pickering*.  In *Pickering*, teachers were "members of a community most likely

5    to have informed and definite opinions" on a matter of public concern relating to funding

6    of the school system.  *Pickering*, 391 U.S. at 572.  Here, Anglin with his expertise is most

7    likely to have informed and definite opinions regarding training of peer support specialists.

8          The parties dispute whether Anglin adequately alleged he spoke as a private citizen

9    on a matter of public concern.  Centene compares Anglin's statement to an internal office

10   memorandum to a supervisor or a speech to colleagues.  *See e.g. Garcetti*, *Hagen v. City of*

11   *Eugene*, 736 F.3d 1251, 1258-59 (9th Cir. 2013).  Centene points out Anglin used his full

12   name submitting his comments and used "us" and "we" in his comments, making it clear he

13   was an employee.  Anglin argues, however, he was not acting as a private citizen whose

14   "employer [] commissioned" him to write a report, give a speech or offer his honest

15   assessment.  *Garcetti*, 547 U.S. at 411.

16         Anglin made his comments on a portal where members of the public could not view

17   the comments.  The Supreme Court has stated:

18         When employee speech concerning office policy arises from an employment dispute
           concerning the very application of that policy to the speaker, additional weight must
19         be given to the supervisor's view that the employee has threatened the authority of
           the employer to run the office.
20

21   *Connick*, 461 U.S. at 153.  However, Anglin's comments were subject to a public records

22   request.  Further, although Anglin's comments addressed a policy that applied to him and

23   could be viewed as Anglin threatening the authority of supervisors, Anglin has alleged the

24   _____

25   statements in consideration of this Order.  *See e.g.*, *Anderson v. Angelone*, 86 F.3d 932, 934
     (9th Cir. 1996) (12(b)(6) motion to dismiss must be treated as a motion for summary
26   judgment "if either party to the motion to dismiss submits materials outside the pleadings in
     support or opposition to the motion, and if the district court relies on those materials.").
27   Rather, the Court accepts the facts as alleged in Anglin's Amended Complaint,

28                                          - 9 -

comments were directed at a broader policy change affecting Medicaid recipients statewide, suggesting a public concern.

Taking the facts as alleged in Anglin's FAC, the Court does not consider the additional statements in the comment provided by Centene in consideration of this Order. As such, the Court finds Anglin has adequately alleged that, instead of speaking as an employee on matters of a personal interest, Anglin was speaking on matters of a public concern. Indeed, Anglin made his comments not to his employer, but on a privately-owned device and through a public portal during his private time. Further, in making his comments, he did not identify himself as an employee of Centene. Lastly, while the proposed change is alleged to likely affect Anglin's duties, his comments raised an issue in which the public or community would likely be truly interested. *Desrochers*, 572 F.3d at 713.

Therefore, the Court finds Anglin has adequately alleged that, acting as a private citizen, he made statements on a matter of public concern.

B. *State Actor*

"A defendant acts under color of law if he 'exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1100, 1106 (D. Nev. 2011), *quoting West v. Atkins*, 487 U.S. 42, 49 (1988), *alterations omitted*. Although typically only public agencies and officers act "under color of state law," private individuals may be liable under § 1983 in certain circumstances. *Id.*, *quoting Taylor v. First Wyo. Bank*, N.A., 707 F.2d 388, 389 (9th Cir. 1983). Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).

Centene asserts it is a private entity and not a state actor and that none of the four tests for state action – nexus, public function, joint action, and state compulsion – are

adequately alleged in this case.  Anglin argues, however, that Centene acted under color of state law due to its contractual relationship with AHCCCS and the significant encouragement from state employees to discipline him.

1. *Nexus*

The Supreme Court has stated:

> [T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." [*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)].  The complaining party must also show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." [*Id.*, at 351].  The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.  The importance of this assurance is evident when, as in this case, the complaining party seeks to hold the State liable for the actions of private parties.

*Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020).

Centene compares this case to another district court case:

> In [*Quinones v. UnitedHealth Grp. Inc.*, CIVIL No. 14-00497 LEK-RLP (D. Haw. July 24, 2015)], the plaintiff's allegations supporting state action focused on the contractual relationship between the State of Hawaii and the defendants (UnitedHealth Group Incorporated, UnitedHealthcare, Inc., and United Healthcare Insurance Co.).  *Id.*  The plaintiff's complaint alleged that the State contracted with the defendants, provided over half of the funding for the defendants' Medicaid program, and generally oversaw and monitored the defendants' implementation of that program.  *Id.*  Importantly, however, nowhere in the complaint did the plaintiff allege that the state took any direct action related to the underlying allegations of the plaintiff's complaint.  *Id.*  At most, the plaintiff alleged facts that showed "some general level of 'acquiescence.'"  *Id.* at *12.  Action taken by private entities with the mere approval or acquiescence of the State is not state action.  *Id.*  Accordingly, the *Quinones* court granted the defendants' motion for judgment on the pleadings on a Section 1983 claim finding the plaintiff alleged no facts to show the State "has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to' be that of the State" or that the State was involved in the decision at issue.  *Id.* at **11-12.

Similarly, Plaintiff's allegations supporting state action center on the contractual relationship between AHCCCS and Centene's entity. (Complaint at ¶ 10, 11, 13, 63, 64, 65[,] 68.)  Plaintiff erroneously concludes from this contract that Centene's actions are attributable to AHCCCS.  (*Id.*)  Plaintiff's conclusory allegations are contrary to the law.  *Quinones v. UnitedHealth Grp. Inc.*, CIVIL No. 14-00497 LEK-RLP, at *12 (D. Haw. July 24, 2015) ("If contracting, funding, and regulating

was sufficient to create state action, nearly every government contract would produce the possibility of § 1983 liability against the government contractor."). Plaintiff's conspiratorial allegations do not show that [] AHCCCS was directly involved in the termination decision. At most, he alleges facts that show Co-Defendant Kennard was "displeased" and "frustrated" with Plaintiff's comments and previous unprofessional conduct. (Complaint at ¶¶ 47, 48, 51.) Plaintiff "believes" Co-Defendant Kennard instructed or encouraged Centene to discipline him. (*Id.* at ¶ 52.) These conclusory allegations are bereft of any facts alleging sufficient state action.

Motion to Dismiss (Doc. 31, pp. 8-9), *paragraph break added*.

Anglin argues, however, that he does not solely rely on the contractual relationship with the government. Rather, Anglin argues that Centene performed services based on state law that requires the state to perform certain healthcare-related services. Further, Anglin asserts the FAC allegations demonstrate a relationship between AHCCCS and Centene as to how employees were hired, evaluated, disciplined and terminated.

The FAC's allegations set forth "factual content that allows the [C]ourt to draw the reasonable inference[,]" *Iqbal*, 550 U.S. 678, that a nexus existed between AHCCCS and Centene as to employment matters. The allegations indicate a temporal proximity between Anglin's comments, an AHCCCS employee's expression of displeasure, and the termination of Anglin. While additional facts developed during discovery may ultimately show an insufficient link, the Court finds Anglin has sufficiently alleged a nexus to state a claim upon which relief *may* be granted. *See e.g. J.K. By & Through R.K. v. Dillenberg*, 836 F. Supp. 694, 698 (D. Ariz. 1993) (private provider was a state actor when that private entity had been assigned the entire responsibility for mandated health care duties).

2. *Public Function*

"The fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019). As summarized by another district court:

Under the public-function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or

- 12 -

instrumentalities of the State and subject to its constitutional limitations."[35] "To satisfy the public-function test, the function at issue must be both traditionally and exclusively governmental."[36]

> [35][Lee v. Katz, 276 F.3d 550, 554-55 (9th Cir. 2002) (quoting Evans v. Newton, [382 U.S. 296, 299] (1966)).
>
> [36]Id. at 555.

Solomon v. Las Vegas Metro. Police Dep't, 441 F. Supp. 3d 1090, 1097 (D. Nev. 2020). Indeed, a private party may be treated as a government actor where "the alleged infringement of federal right [is] fairly attributable to the [government.]" Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003), citation omitted.  That Centene, the entity for which Anglin was a private employee, does business under contract with the government does not in itself subject it to constitutional liability, let alone create such liability for its individual private employees.  Holly v. Scott, 434 F.3d 287, 293 (4th Cir. 2006), cert. denied.

The public function test is "difficult to meet," and there is a "lean list of [ ] 'very few' recognized public functions, including 'running elections,' 'operating a company town,' and not much else."  Prager Univ. v. Google LLC, 951 F.3d 991, 997-98 (9th Cir. 2020), citations omitted.  As summarized by another district court:

> Health care characteristically has been shared between the public and private sector and has not been an exclusive function of the state. See Modaber v. Culpeper Mem'l Hosp., Inc., 674 F.2d 1023, 1026 (4th Cir. 1982) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352-54 (1974)) ("Although health care is certainly an 'essential public service,' it does not involve the 'exercise by a private entity of powers traditionally exclusively reserved to the State.'").

Tackett v. United States Dep't of Health & Hum. Servs., No. CV-21-37-M-BMM, 2022 WL 952074, at *4 (D. Mont. Mar. 30, 2022), aff'd in part, vacated in part, remanded sub nom. Tackett v. Montana Dep't of Pub. Health & Hum. Servs., No. 22-35326, 2024 WL 2826223 (9th Cir. June 4, 2024).  Although the hospital in Modaber received significant government funding and "accepted Medicare and Medicaid patients." 674 F.2d at 1024, accepting the privileges of state funding and licensing does not demonstrate that the hospital qualified as a state actor.  Id. at 1026-27.

The Court finds Anglin has not sufficiently alleged Centene was acting as a state

actor in the exercise of a power traditionally exclusively reserved to the government. *See Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 248 (1st Cir. 2012) (operating a health management organization that provides or coordinates health care for Medicare recipients through a contract with the federal government does not qualify as a traditional public function); *see also Taranov v. Area Agency of Greater Nashua*, No. 2023 DNH 129, 2023 WL 6809637, at *4 (D.N.H. Oct. 16, 2023), *Bourbon Cmty. Hosp., LLC v. Coventry Health & Life Ins. Co.*, No. 3:15-cv-00455-JHM, 2016 WL 51269, at *3 (W.D. Ky. Jan. 4, 2016) (collecting cases for the proposition that a managed care organization that provides healthcare to Medicaid beneficiaries pursuant to a contract with the state is not performing a traditional public function).

### 3. *Joint Action*

It does not appear Anglin is arguing the government and Centene engaged in joint action.  As the Court starts "with the presumption that private conduct does not constitute governmental action[,]" *Sutton*, 192 F.3d at 835, the Court finds Anglin has not sufficiently alleged Centene was a state actor based on joint action.

### 4. *State Compulsion*

To allege state action under the state compulsion test, Anglin must allege a "particularly close tie between the state and the private party's conduct, such that the conduct may fairly be regarded as state action." *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011).  Indeed, Centene's action must be coerced or significantly encouraged by the state to such an extent that the decision is not truly Centene's.  *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997).  Anglin must allege "the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert,' that the challenged conduct fairly can be attributed to the State." *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999), *quoting Blum*, 457 U.S. at 1004.

1    Anglin alleges government employee Kennard initiated communications with
2    Centene employee Brown within hours after Anglin posted his comments. Further, Kennard
3    is alleged to have expressed her displeasure with Anglin's decision to express his opinion
4    in a public comment and requested Brown work with Anglin regarding professional conduct.
5    Shortly thereafter, Anglin was stripped of responsibilities as a result of his public comment.
6    Within a few days, Anglin was terminated and neither Brown nor Uhlich provided Anglin
7    with a non-retaliary reason for the termination. Centene argues that private decisions that
8    may have been influenced by state feedback is not state compulsion. *See Caviness v.*
9    *Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 817-18 (9th Cir. 2010). However,
10   drawing reasonable inferences from the FAC, it appears "indices of the Government's
11   encouragement, endorsement, and participation" to promote particular private conduct,
12   *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 762 (9th Cir. 2024), are
13   present in this case, at least sufficiently to state a claim upon which relief *may* be granted.

14

15   V. *Government Liability for Employees*

16    A government entity "cannot be held liable solely because it employs a tortfeasor."
17   *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (2000). The local government "itself
18   must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th
19   Cir.1992), *cert. denied*, 510 U.S. 932 (1993). Because liability of a local governmental unit
20   must rest on its actions, not the actions of its employees, a plaintiff must go beyond a
21   *respondeat superior* theory and demonstrate that the alleged constitutional violation was the
22   product of a policy or custom of the local governmental unit. *City of Canton, Ohio v.*
23   *Harris*, 489 U.S. 378, 385 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–480
24   (1986). Additionally, where an alleged violation by a private entity alleged to have acted
25   under color of state law has been made, it must also be alleged the violation was "caused
26   by an official policy or custom of" the private entity. *Tsao v. Desert Palace, Inc.*, 698 F.3d
27   1128, 1139 (9th Cir. 2012). In other words, to state a civil rights claim against a

28

government entity or a private entity acting under color of law, a plaintiff must allege the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691–694; *Pembaur*, 475 U.S. at 483 ("[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"); *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir.2002).

Additionally, a government entity "may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001), *quoting Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.2007). Indeed, a governmental body may be liable if its failure to train employees has caused a constitutional violation and the failure to train amounts to deliberate indifference to the rights of individuals with whom those employees come into contact. *See City of Canton*, 489 U.S. at 388-89; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1995), *cert. denied*, 520 U.S. 1117.

After *Iqbal*:

Allegations of *Monell* liability will be sufficient . . . where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur.

*Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018), *citations omitted*; *see also Harvey v. City of S. Lake Tahoe*, No. CIV S-10-1653 KJM EFB PS, 2011 WL 3501687, *3 (E.D. Cal. Aug. 9, 2011), *citations omitted* (dismissing claims because

1   "Plaintiff has not identified any [municipal] policy or custom in his first amended complaint,

2   has not alleged that the ... employees acted pursuant to a County policy or custom, and has

3   not alleged that their conduct conformed to an official policy or custom. Additionally,

4   because he has not identified any such policy or custom, he also has not explained how the

5   policy or custom is deficient, has not explained how the policy or custom caused him harm,

6   and has not explained how the policy or custom amounted to deliberate indifference.").

7   Anglin's FAC does not identify any challenged policy or custom or any unconstitutional

8   order. Further, the FAC does not allege the conduct was anything other than an isolated

9   incident. The FAC does not explain how the policy or custom is deficient, explain how the

10  policy or custom caused Anglin harm, or reflect how the policy or custom amounted to

11  deliberate indifference.

12      Anglin argues, however, in his Response to the MTD that, where an entity fails to

13  guide or correct its employees with regard to a "patently obvious" individual constitutional

14  violation, as opposed to a pattern, a *Monell* claim may be shown. Response (Doc. 34, pp.

15  9-10), *citing Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016). Indeed, in

16  *dicta* the Supreme Court has stated:

17      For example, city policymakers know to a moral certainty that their police officers
        will be required to arrest fleeing felons. The city has armed its officers with
18      firearms, in part to allow them to accomplish this task. Thus, the need to train
        officers in the constitutional limitations on the use of deadly force, *see Tennessee v.*
19      *Garner*, 471 U.S. 1 [(1985)], can be said to be "so obvious," that failure to do so
        could properly be characterized as "deliberate indifference" to constitutional rights.
20

21  *City of Canton*, 489 U.S. at 390, n. 10. The *Kirkpatrick* court summarized this principle as

    follows:
22

23      [E]vidence of a pattern of constitutional violations is not always required to succeed
        on a Monell claim. *See* Dissent Op. at 801–02, 802. The Supreme Court has
24      reaffirmed that "in a narrow range of circumstances" a particular "showing of
        'obviousness' can substitute for the pattern of violations ordinarily necessary to
        establish municipal culpability." *Connick*, [563 U.S. at 63]. Such a situation is
25      "rare"—"the unconstitutional consequences of failing to train" must be "patently
        obvious" and the violation of a protected right must be a "highly predictable
26      consequence" of the decision not to train. *Id.*

27  *Kirkpatrick*, 843 F.3d at 794.

28

1    The court in *Kirkpatrick* was addressing a motion for summary judgment. Here,

2    Anglin has not even alleged an obvious failure to train in his FAC. However, a reasonable

3    inference from the FAC sufficiently implies the unconstitutional consequences of failing to

4    train are patently obvious and the violation of a protected right was a highly predictable

5    consequence of the decision not to train. The issue is, whether, as a matter of law, the facts

6    sufficiently allege (and raise reasonable inferences) "the inadequacy of the training was

7    patently obvious to [Centene]. While a reasonable jury might conclude that the quality of

8    training or amount of training constituted negligence, [the alleged facts and inferences are]

9    not so egregious that a resulting constitutional violation was "highly predictable."

10   *Nordenstrom for Est. of Perry v. Corizon Health, Inc.*, No. 3:18-CV-01754-HZ, 2021 WL

11   2546275, at *14 (D. Or. June 18, 2021). The Court agrees with Centene that "it is not

12   patently obvious that a private employer must train management about the First

13   Amendment." Reply (Doc. 35, p. 2).

14   The Court finds Anglin has failed to state a claim upon which relief may be granted

15   as to Centene. Further, because it is (1) not patently obvious the lack of training would

16   result in a highly predictable constitutional violation or (2) anything other than an isolated

17   incident is at issue, allowing Anglin to amend his FAC would be futile. *Barahona v. Union*

18   *Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018), *citation omitted* ("leave to amend

19   should be denied as futile 'only if no set of facts can be proved under the amendment to the

20   pleadings that would constitute a valid and sufficient claim or defense'"); *see also Bonin v.*

21   *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify

22   the denial of a motion for leave to amend."). The Court will dismiss Centene and the claims

23   against it from this action.

24

25   VI. *Joinder*

26   Kennard and Demyan join in the Motion to Dismiss for failure to state a claim upon

27   which relief could be granted as to claims and theories relevant to them. While the Court

28

has found dismissal of Centene is appropriate based on a lack of *Monell* liability, this determination does not affect the claims as stated against Kennard and Demyan. The matter shall proceed against these defendants.

Accordingly, IT IS ORDERED:

1. The Motion to Dismiss Centene Corporation (Doc. 31) filed by Defendant Centene Corporation Incorporated is GRANTED. Defendant Centene and the claims alleged against it are DISMISSED.

2. The claims against Defendants Kennard and Demyan remain pending.

3. The Rule 16 Case Management Conference is set for **June 5, 2025, at 9:45 a.m.**, with Elizabeth J. Jarecki, law clerk to the Honorable Cindy K. Jorgenson.

4. Counsel shall file with the Court, on or before **May 29, 2025**, a Joint Report as discussed in the March 11, 2025, Order.

5. Counsel shall notify the law clerk on or before **May 29, 2025**, of any conference call-in information needed.

6. All remaining provisions set forth in the October 31, 2024, Order shall remain in full force and effect.

DATED this 28th day of April, 2025.

Cindy K. Jorgenson
United States District Judge

- 19 -