**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Anglin,<br><br>      Plaintiff,<br><br>vs.<br><br>Susan Kennard, *et al.*,<br><br>      Defendants. | No. CIV 24-304-TUC-CKJ<br><br>**ORDER** |

       Pending before the Court is the Motion for Leave to File Second Amended Complaint (Doc. 37) filed by Plaintiff John Anglin ("Anglin"). Defendants Susan Kennard ("Kennard") and Alex Demyan ("Demyan") have filed a Notice stating they have no objection to Anglin's request (Doc. 38). Non-party Centene Corporation ("Centene") has filed a response (Doc. 40) and Anglin has filed a reply (Doc. 42).

I. *Procedural Background*

       On June 18, 2024, Anglin filed the original Complaint in this action against Kennard and Demyan. This Court screened the Complaint and determined Anglin had adequately alleged First Amendment retaliation claims against Kennard and Demyan. On November 25, 2024, Anglin filed a First Amended Complaint ("FAC"), which added Centene as a defendant. Anglin alleged First Amendment retaliation claims under 42 U.S.C. § 1983 against Centene, Kennard, and Demyan. Anglin alleged his termination of employment was a result of his protected speech on a matter of public concern.

       In an April 28, 2025, ruling on a Motion to Dismiss (Doc. 31), the Court dismissed

Centene from this action. The Court's Order discussed the balancing test set forth in *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968). The Court determined Anglin was speaking on matters of a public concern and Anglin sufficiently alleged facts and raised reasonable inferences that Centene acted under color of state law, but failed to adequately allege liability under *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (2000).

Anglin has filed a Motion for Leave to File a Second Amended Complaint ("SAC") ("Motion") (Doc. 37) in which he proposes to add Karin Uhlich ("Uhlich"), an individual employee of Centene, as a Defendant. Uhlich is a "Centene employee who was previously identified in [Anglin's] First Amended Complaint as a supervisory employee who made the decision to terminate [Anglin's] employment." Motion (Doc. 37, p. 3). Centene has filed a response (Doc. 40) and Anglin has filed a reply (Doc. ).

II. *Opposition to Motion to Amend*

Anglin argues non-party Centene cannot object to the Motion "absent a request to submit an *amicus curiae* brief, a request to intervene, or eligibility to file papers pursuant to Rule 14 (third party practice)." Reply (Doc. 42, p. 2). Indeed, the U.S. Const., Art. III's core principle is that each party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 676–77 (9th Cir. 2021), *quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Another court in this district has found standing to oppose a motion for leave to amend is not clear where the motion does not "purport to raise any new claims against [them] and simply seeks to add a new co-defendant" because 'parties unaffected by the proposed amendment do not have standing to assert claims of futility on behalf of proposed defendants.'" *Murphy v. Fisher*, No. CV-19-04526- PHX-DWL, 2019 WL 5388039, at *2 (D. Ariz. Oct. 22, 2019), *quoting Castellani v. City of Atlantic City*, No. CV 13-5848

- 2 -

(RMB/AMD), 2015 WL 12829622, at *2 (D.N.J. Aug. 4, 2015); *see also Doe v. ESA P Portfolio LLC*, No. 3:23-CV-06038, 2024 WL 943468, at *2 (W.D. Wash. Mar. 5, 2024); *Murphy v. Fisher*, No. CV-19-04526-PHX-DWL, 2019 WL 5388039, at *2 (D. Ariz. Oct. 22, 2019). Other district courts have similarly concluded. *See, e.g.*, *O'Gorman v. Mercer Kitchen L.L.C.*, No. 20-CV-1404 (LJL), 2021 WL 602987, at *2 (S.D.N.Y. Feb. 16, 2021); *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. CIV. 13-5592 NLH/AMD, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014). Moreover, Centene has not taken any action to appear properly before the Court to object to the proposed amendment. *See e.g.* Fed.R.Civ.P. 24 (intervention); *Jamul Action Comm. v. Stevens*, No. 2:13-CV-01920-KJM, 2014 WL 3853148, at *5 (E.D. Cal. Aug. 5, 2014) (non-party sought leave to file an amicus brief in support of a motion to dismiss).

The Court finds non-party Centene does not have standing to oppose the Motion. *See* LRCiv 7.2(c) ("The opposing *party* shall . . . file a responsive memorandum."), *emphasis added*. The Court will not consider the response. The Court, therefore, will determine whether the filing of the Motion is appropriate in light of applicable standards. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("A simple denial of leave to amend without any explanation by the district court is subject to reversal.").

III. *"Consent" to Amendment of Complaint*

Where a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). Defendants Kennard and Demyan have submitted a filing indicating they do not object to the SAC. The applicable local rule states, *inter alia*, that if a party "does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily. LRCiv 7.2(i). Here, Kennard and Demyan filed an answering memorandum in which they stated they did not object to the Motion.

- 3 -

However, they do not state they "consent" to the Motion. The Court finds, in these circumstances, it cannot be said Kennard and Demyan have provided "written consent" to the filing of the SAC.

IV. *Amendment of Complaint*

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (2014), *quoting Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Not all of these factors merit equal weight; rather, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Further, a district court does not "abuse its discretion in denying a motion to amend a complaint . . . when the movant present(s) no new facts but only 'new theories' and 'provid[es] no satisfactory explanation for his failure to fully develop his contentions originally.'" *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004), *quotation omitted*

Here, Anglin seeks to add an additional party. The SAC also includes additional allegations, but does not seek to add any additional claims.

A. *Bad Faith*

The Court finds there is no basis to conclude Anglin is acting in bad faith in seeking to file his SAC. The Court finds this factor is neutral.

B. *Undue Delay*

The Ninth Circuit has stated, "Absent prejudice, or a strong showing of any of the remaining [*Foman v. Davis*, 371 U.S. 178 (1962)] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052, *citation*

- 4 -

*omitted*.  "[D]elay, by itself, is insufficient to justify denial of leave to amend[,]" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987), especially "where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith . . . "  *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of S. Ca.*, 648 F.2d 1252, 1254 (9th Cir.1981).  However, the Ninth Circuit has also given greater weight to the undue delay factor where the facts and theories sought to be added were known to moving party early in the litigation. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994).  In evaluating undue delay, the Court also considers whether Anglin "knew or should have known the facts and theories raised by the amendment in the original pleading." *Bus. Warrior Corp. v. Li*, No. 8:22-CV-02144-DOC-ADSX, 2024 WL 3005927, at *4 (C.D. Cal. May 21, 2024), *quoting Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Segal v. Rogue Pictures*, 544 F. App'x 769, 770 (9th Cir. 2013). The Court also considers whether the delay "prejudices the nonmoving party or imposes unwarranted burdens on the court." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1212 (S.D. Cal. 2012).

Delays of one year or less have been determined to be both undue and not undue, depending on the circumstances (e.g, reason for delay, status of proceedings).  *See e.g. Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) (delay of about one year, without a good reason and after discovery was closed, was undue); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (C.D. Cal. 1999) (delay of about eight months, sought to clarify claims and discovery ongoing). Additionally, the Ninth Circuit has approved an amended complaint where the delay was tied to identifying the proper parties and not bad faith. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186–87 (9th Cir. 1987).

Here, the delay involves a potential additional defendant and there is no indication of bad faith.  Moreover, Kennard and Demyan would not be prejudiced nor would an unwarranted burden be placed on the Court (the parties agreed to continue the Rule 16 Case Management Conference pending resolution of this motion; no trial date is set). Moreover,

1  while Uhlich was known to Anglin and not included in either the original or FAC, she is
2  related to the claims and was identified in the original complaint and FAC as a relevant
3  person with, at a minimum, important knowledge of the claims. *See e.g. Synthes, Inc. v.*
4  *Marotta*, 281 F.R.D. 217, 228 (E.D. Pa. 2012).

5  In these circumstances, the Court finds this factor slightly weighs in favor of denying
6  the request to amend. *See e.g., Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309
7  F.R.D. 645, 652 (W.D. Wash. 2015) ("Whether there has been 'undue delay' should be
8  considered in the context of (1) the length of the delay measured from the time the moving
9  party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial
10 date.").

12 C.  *Prejudice to the Opposing Party*

13 The Court finds Kennard and Demyan will not be prejudiced by the proposed
14 amendment. It is this consideration that carries the greatest weight. *Eminence Cap.*, 316
15 F.3d at 1052. The Court considers that "generally a party will not be deemed prejudiced by
16 an amended pleading if the amendment relates to the same conduct, transaction, or
17 occurrence alleged in the original pleading, or if the opposing party is otherwise aware of
18 the facts contained in the amended pleading." 61A Am. Jur. 2d Pleading § 724, *citations*
19 *omitted*. In this case, the proposed amendment is related to the parties and the conduct
20 alleged in the FAC.

21 Further, prejudice may be found where the "parties have engaged in voluminous and
22 protracted discovery" prior to amendment, or where "[e]xpense, delay, and wear and tear on
23 individuals and companies" is shown. *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994),
24 *overruled on other grounds*; *see also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387–88 (9th
25 Cir.1990) (prejudice exists where permitting plaintiff to file an amended complaint will lead
26 to "the nullification of prior discovery," increase "the burden of necessary future discovery,"
27 and the "relitigation of a [previously-decided] suit"); 61B Am. Jur. 2d Pleading § 724

- 6 -

1  (prejudice in this context means "an undue difficulty or serious disadvantage in prosecuting or defending the action").

Granting Anglin's request may result in limited additional discovery. However, Uhlich was identified from the beginning as a person, at a minimum, with relevant information. In other words, to the extent Defendants would suffer any prejudice from the amendment, it is minimal. This factor weighs in favor of permitting the amendment.

D.  *Futility of Amendment*

"[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense[.]'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018), *citation omitted; see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Here, the Court has determined Anglin has stated sufficient facts to state viable claims. The Court must decide if those claims have adequately been stated against proposed new Defendant Uhlich.

As the Court has discussed in prior Order, it takes as true all allegations of material fact and construes them in the light most favorable to Anglin, *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003), but does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations, *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Additionally, as the Court has previously discussed the requirements for stating a claim upon which relief can be granted, the Court will only address the issues pertinent to determining if Anglin's proposed amendment is futile.

Initially, the Court recognizes Anglin alleges an affirmative link between Anglin's discipline and termination and the conduct of Uhlich. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). Further, the SAC alleges or raises a reasonable inference Uhlich personally

participated in the alleged constitutional deprivation of Anglin, *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).  *See* SAC (Doc. 37-1, p. 11) (Uhlich is alleged to have been provided a copy of Anglin's public comment by Kennard and have terminated Anglin's employment).

The Court has determined "a nexus existed between [Arizona Health Care Cost Containment System ("AHCCCS")] and Centene as to employment matters" and "'indices of the Government's encouragement, endorsement, and participation' to promote particular private conduct [*citation omitted, . . .* were] present in this case, at least sufficiently to state a claim upon which relief *may* be granted.  April 28, 2025, Order (Doc. 36, pp. 12, 15), *emphasis in original*.  In other words, the Court found Anglin had sufficiently alleged Centene was a state actor.

A defendant acts under color of law if he 'exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Although typically only public agencies and officers act "under color of state law," private individuals may be liable under § 1983 in certain circumstances. *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1100, 1106 (D. Nev. 2011), *citations omitted*.  Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).

Uhlich was employed by Centene, a private entity, and served as the Director of Health Services for its Arizona Complete Health during the events alleged in the SAC.  She had the authority to discipline, re-assign, and terminate certain subordinate employees, including Anglin.  Shortly after Anglin posted the September 18, 2023, comments which are the subject of this suit, AHCCCS's Kennard is alleged to have expressed to Anglin's direct supervisor at Centene her displeasure with Anglin's decision to state his opinion in a public comment and implicitly suggested Anglin's decision amounted to unprofessional conduct. Anglin alleges during the few days following the posting, Kennard expressed a belief, to

which Demyan concurred, that it was appropriate to instruct and/or encourage Centene to discipline Anglin. Shortly thereafter, Anglin alleges Uhlich stripped Anglin of certain responsibilities and Anglin was informed the reductions in responsibilities were as a result of his public comment. Anglin's SAC further alleges:

> 69. Upon information and belief, Defendant Kennard had provided [Anglin's direct supervisor] and [Defendant Uhlich] with a copy of Plaintiff's public comment.
>
> 70. On September 25, 2023, [Defendant Uhlich] informed Plaintiff that he was terminated effective immediately.
>
> 71. Neither [Anglin's direct supervisor] nor [Defendant Uhlich] provided Plaintiff with a nonretaliatory reason for his termination.

SAC (Doc. 37-1, p. 11).

The SAC's allegations set forth "factual content that allows the [C]ourt to draw the reasonable inference[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that a nexus existed between not only Centene and AHCCCS, but also Uhlich and AHCCCS, as to employment matters. The allegations indicate a temporal proximity between Anglin's public comments, an AHCCCS employee's expression of displeasure, Kennard providing a copy of Anglin's public comment to his direct supervisor and Uhlich (Centene employees) and the termination of Anglin by Centene employee Uhlich. While additional facts developed during discovery may ultimately show an insufficient link, the Court finds Anglin has sufficiently alleged a nexus to state a claim upon which relief *may* be granted. *See e.g. J.K. By & Through R.K. v. Dillenberg*, 836 F. Supp. 694, 698 (D. Ariz. 1993) (private provider was a state actor when that private entity had been assigned the entire responsibility for mandated health care duties).

Further, Anglin alleges government employee Kennard initiated communications with Anglin's direct supervisor with Centene within hours after Anglin posted his comments. Further, Kennard is alleged to have expressed her displeasure with Anglin's decision to express his opinion in a public comment and suggested that decision constituted unprofessional conduct. Shortly thereafter, Anglin was stripped of responsibilities as a

result of his public comment. Within a few days and after Kennard is alleged to have provided a copy of Anglin's public comment to his direct supervisor and Uhlich (Centene employees), Anglin was terminated and neither his direct supervisor nor Uhlich provided Anglin with a non-retaliatory reason for the termination. Drawing reasonable inferences from the SAC, it appears "indices of the Government's encouragement, endorsement, and participation" to promote particular private conduct, *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 762 (9th Cir. 2024), are present in this case, at least sufficiently to state a claim upon which relief *may* be granted.

The Court finds Anglin's SAC would not be futile. The Court finds this factor weighs in favor of granting the request to amend.

E. *Previous Amendments*

Anglin has previously amended his complaint once. Although Anglin knew of Uhlich's involvement in the facts and previously had an opportunity to add her as a defendant, Anglin did not seek to state claims against Uhlich in the FAC. The Court finds this factor favors denial of the motion to amend.

F. *Conclusion*

Here, permitting the amendment would cause minimal, if any, prejudice to Defendants and would not be futile. These factors weigh in favor of granting Anglin's request. *See Bonin*, 59 F.3d at 845 (the factors are not given equal weight); *Eminence Cap.*, 316 F.3d at 1052 ("it is the consideration of prejudice to the opposing party that carries the greatest weight"). The neutrality of the bad faith, as well as the undue delay and prior filing factors favoring denial of the motion, does not outweigh the lack of prejudice and lack of futility. *See* Fed.R.Civ.P. 15(a) (leave to amend should be freely granted when justice so requires). The Court will grant the Motion.

Additionally, the Court will schedule a Rule 16 Case Management Conference. The

Court may reset the conference depending when service and the filing of an Answer (or other response) is completed.

Accordingly, IT IS ORDERED:

1. The Motion for Leave to File Second Amended Complaint (Doc. 37) is GRANTED. Anglin shall file the Second Amended Complaint within ten days of the date of this Order. *See* ECF Policies and Procedures Manual §II.H. ("If the motion to amend is granted, the party seeking the amendment must file the amended pleading with the court and serve it on the other parties. It will not automatically be filed by the Clerk's Office.").

2. Anglin shall include a copy of this Order with service of the Summons and Second Amended Complaint upon Uhlich. If Anglin does not either obtain a waiver of service of the summons or complete service of the Summons, Second Amended Complaint, and this Order on Uhlich within 60 days of the filing of this Order, the action may be dismissed as to Uhlich. Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

3. Uhlich must answer the relevant portions of the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

4. A Case Management Conference is set for **November 6, 2025, at 9:45 a.m.**, with Elizabeth J. Jarecki, law clerk to the Honorable Cindy K. Jorgenson. The parties are referred to the requirements set forth in the Court's original Order setting a Case Managment Conference. *See* October 31, 2024, Order (Doc. 14).

5. The conference will be held telephonically and Plaintiff's counsel shall initiate the Case Management Conference by calling the law clerk at (520) 205-4550 with all appearing attorneys on the line at the time of the Conference. If the law clerk needs to call a conference line, Plaintiff's counsel shall notify the law clerk of the required information (e.g., telephone number, conf. i.d. number) on or before **October 30, 2025**, by sending an email to jorgenson_chambers@azd.uscourts.gov or including the information in the Joint

Report.

5. Counsel shall file with the Court, on or before **October 30, 2025**, a Joint Report reflecting the results of their meeting and outlining the discovery plan. It is the responsibility of counsel for Plaintiff to initiate the communication necessary to prepare the Joint Report, prepare the Joint Report, and file the Joint Report. Willful failure to comply may result in the imposition of sanctions. The parties are referred to the requirements of the Joint Report set forth in the Court's original Order setting a Case Management Conference. *See* October 31, 2024, Order (Doc. 14).

DATED this 21st day of August, 2025.

Cindy K. Jorgenson
United States District Judge